Would the panel like a brief recitation of what brought this appeal about or shall I go directly into the analysis? Your honors had requested we be prepared today to discuss, before I continue I would like to reserve three minutes for rebuttal, I apologize, three minutes, the applicability of Bell Atlantic v. Twombly is something that's come up since the briefs in this case were filed, and since then this court has just issued an opinion in Phillips, yes Judge Nygaard's opinion, I was prepared to discuss that as well, and before I get into the affirmance of the complaint it seems clear that reading the Phillips case and the Twombly case we know a couple of things, the first thing I think we have to acknowledge is Twombly is not limited to the antitrust context, the Phillips says that especially, exactly and given the Supreme Court's statement that Twombly sets forth a general standard that's been applied to that case, I don't think it could be argued in good faith by any plaintiff that that is not intended to be such a standard, but Judge Nygaard makes some interesting comments about the continued applicability of the rule 8A2 standard, the court, correct the court, because he speaks for the court, that's correct your honor, and the reasonable inferences that we've all read so much about in cases involving, well let me ask you a question right on, what is the religious significance of the libations ceremony, because this is a religious discrimination case, correct, my understanding is that the ceremony was some sort of an African ceremony that offended the plaintiff's Christian religious beliefs, well what was the ceremony, it involved something called ancestor worship, that I unfortunately I don't presume to be an expert on it, but my client's belief is that when you worship anything other than the one true Christian God, then that offends her religious sensibilities, alright I'm sure that that's what she believes, but she lives in a world of enormous religious diversity, including a country of enormous religious diversity, and a state of enormous religious diversity, so does it offend her to live there, is being offended enough to state a claim here, I think what offended her specifically was the fact that she was expected to participate in the libation ceremony, where does the complaint say that, where does the complaint say anything at all about participation in the libation ceremony, well she did not participate, all it says is she was required to attend the school banquet, correct, at which the ceremony occurred, and she did express her concerns with the ceremony as soon as she could, afterwards, that's correct, and at a minimum I would point out that even assuming that the trial court had it correct about count one, the religious discrimination claim, count two, the retaliation claim, are you suggesting there may be some difficulty here with count one, and accommodation, when, speaking only for myself, it's difficult to glean from the timeline the pleading provides how the employer could have accommodated, based upon what they knew, which was, according to this, only that she was a Christian, and that this would offend the religious beliefs of her and other members of the Christian faith, what I would concede, your honor, is that count one, if I had to pick one of that, count one or count two, count one would not be the stronger of the two, I would submit, however, that the complaint, when you look at the reasonable inferences that can be drawn from it, which is something, again, the Phillips Court just last week talked about, is adequate to survive a 12B6 motion. But there's no allegation that she asked for an accommodation, and in order to state a claim for failure to make an accommodation, isn't it required that you ask for an accommodation? I would respectfully submit that given paragraph 28 of the complaint, which is in the reproduced record at 65A, that the information and belief of the defendants were aware that the ceremony would offend the religious beliefs of plaintiff. But she didn't say, can you, can I not attend? It's my understanding she did not, but she did, she was present when the ceremony went forward. Yeah, but, first of all, I don't see anything in the complaint, and maybe you can help me, that said this was an African worship. Well, it did specifically say that the, paragraph 27 at 6A, I'm sorry, 65A, the libations ceremony violated plaintiff's Christian beliefs, as it required participants to engage in what plaintiff perceived as religious worship of their ancestors, rather than the Christian God. It's very strange to me, I mean, because it's not clear from the complaint whether all that was happening was a, I don't happen to drink. Now, it's one of a few failings I can think of, and that is one of a couple. But, I wouldn't be offended to attend the banquet, at which there's a toast given. It's not a toast, Your Honor, it goes far beyond that, it gets into the area of worship, of something, I guess the old fashioned word for it would be idolatry, for lack of a better term, that offended this lady's Christian religious beliefs. You know, I went on the, I absolutely was able, I was able to go onto the web to find this new technology charter school, and all I can tell is that it teaches kids about the internet and computers. Is that, is that basically what this does? That's the purpose of the school. It's, it's not supposed to get into religious issues, and it's, you know, she actually, as part of her religious complaint, which we discussed in paragraph 31 of the complaint, in page 66A of the reproduced record, she complained that the libation ceremony, quote, made religious objections to it, and did not feel that it was appropriate for a publicly funded entity to engage in any sort of religious worship. And after the fact. After the fact. And that gets back to, if, if Your Honor's belief count one was not strong enough, count two definitely was, because even under whatever heightened standard the Twombly court may have put in, and all I can glean from it, with the help of the Phillips panel's opinion, was that there is a plausibility standard that has now been applied. And we know the Conley versus Gibson language is aggregated, but the difficulty is, what is a plausibility standard? The court says it's more than a possibility, which I would take to mean more than 1%, but it's not a probability, which I would take to mean less than 51%. So we're left with something between 1% and 51%. If you were given an opportunity to amend the complaint, how would you amend it? I, I think the retaliation claim is adequate, I think. As a matter of fact, it has been amended once. It was amended once. We're actually here. And we still have the, the, the bear of ermines that we have at least as to count one. Well, I believe that count one, you know, I had a shot to amend it, to be frank, and I think I've had my chance. And I, I think I would, I could certainly request, given the changed standard in Twombly, I certainly wouldn't hesitate to request another shot at it. But again, I think at a minimum, count two, the retaliation claim is strong. You characterized count two as a retaliation claim under Title VII. What is the protected activity that she alleges she engaged in and which resulted in retaliation? That would be the religious objection identified in paragraph 31 of the complaint to the ceremony shortly after the ceremony took place. And we've learned that this was a direct result of that complaint as well as her Christian beliefs. Right. And in the brief, for example, you see, as I read your brief, you say that what the protected activity that she was engaged in was that she was complaining about a public school, a publicly funded school, having a religious ceremony as a part of its curriculum. Correct. But how is that a protected activity under Title VII? That may be a First Amendment-free establishment claim of some kind. But what's it got to do with Title VII? If she has a reasonable belief that she's making a religious objection to something, that's adequate for Title VII retaliation. There's some paragraphs at 23 and 24 that she disclosed her Christian ministry activities when she was first hired and that they were aware she was a Christian. And reading the complaint as a whole, which I believe we have to, and giving the plaintiff the benefit of all reasonable inferences, which the Phillips Court has specifically said we still must do, even in light of Twombly, there's enough there to make that a retaliation claim. And turning to – this was actually page 16 of the Phillips opinion. The Phillips Court has said that Twombly requires a complaint with enough factual matter to, quote, suggest, close quote, the required element. And I think that Ms. Wilkerson's amended complaint does that. The Phillips Court also continued that this was not imposing a probability requirement on pleadings. And again, I think the Twombly Court made it clear that that's not what it was doing. But I think it's worth mentioning Twombly may not be applied equally across the spectrum of all types of civil cases. While I concede it would not be limited only to the antitrust context, we have the Erickson v. Pardis decision only two weeks after the Twombly case, where the court made specific reference to the liberal pleading rules, Rule 8, and the fact that the circuit court should not have dismissed the complaint as being too vague. Can you give us some facts as to what this idolatry ceremony was, what they said? My only understanding of it was that it was worship of one's ancestors. And that's the extent of my knowledge as to what happened at that ceremony. Of course, under Rule 11, CASEL has an obligation to ascertain enough of the facts so that you file a pleading that is not frivolous. Correct. And I read very carefully for this, re-read the commentary to Rule 11. So you keep answering and say, as far as you know, it's this. So I'm asking you, can you give us a little more facts that were the basis for the allegation in the complaint that this is ancestor worship? My understanding is that this ceremony reveres one's ancestors as deities. This ceremony reveres the ancestors of the person or persons participating in it as religious deities. And that in particular is what offended Ms. Wilkerson about it. It was not simply a cultural issue. It was not simply an issue of state funding. This was an issue of religion to her. To her? To her. To a reasonable person, it would have to be. Yes. And for what it's worth, I interviewed her extensively, and she's a very reasonable person. Wow. But turning back to the fields court. Why would the employer here reasonably believe that a libation ceremony would offend, to use her language, paragraph 28, would offend the religious beliefs of plaintiffs and other members of the Christian faith? Other members of the Christian faith, members of the Christian faith as I understand that, look scripturally not only to what's called the New Testament, but also to the Old Testament of the Hebrew Scriptures, which include several references to libations or libation ceremonies. That's all part of the Christian tradition, therefore. Why would any reasonable employer think that a libation ceremony would offend the religious beliefs of plaintiffs and other members of the Christian faith? My understanding is this is not the type of libation ceremony Your Honor is referring to. Well, it's not the kind of libation ceremony I've ever participated in either, but that goes back to the point that Judge Kidd made. I think the difficulty here is the libation ceremonies Your Honor is referring to in the Bible do not specifically worship one's ancestors and raise them to the level of deities. I assume my time has expired. I thank Your Honors. Thank you. We'll get you back on rebuttal. Thank you. Ms. Sandler. Good afternoon and may it please the Court, my name is Debbie Sandler with the Law Firm of White and Williams, representing the appellees in this case. Let me focus your attention just for a moment. Let's for a moment put aside anything about failure to accommodate and put aside anything about retaliation. In paragraph 35, Ms. Wilkerson alleges that her employment ceased involuntarily, quote, as a result of her Christian beliefs, refusal to participate in her complaints. Now, in addition to that rather conclusory statement, she alleges that there was a religious ceremony as a part of the school curriculum in May of 2005, that that was followed by her complaints and the complaints were followed by discussions with other school staff and that was followed in June, a month later, by a failure to renew her contract and that the letter that came, she alleges, gave no performance-related reason for failure to renew her contract and indeed acknowledged positive contributions that she had made. Now, even under Thwombley, I mean, you may not think that's a case that anybody can prove well persuasively, but under Thwombley, isn't that enough of notice pleading? Rule 8, doesn't that give you enough to prepare a defense? I would suggest that it does not, Your Honor, because the facts on the record are that she was hired for a specific period of time, from March 7th to June 17th, and there's no allegation that she had an expected... That's not what the contract says, is it? It sets out the dates of her employment in the school year. Did the court really here base its reasoning and denial of the motion to dismiss on contract principles, did it not? I don't know that I would know that for you, Your Honor. I think that the court recognized that there were a failure to allege that she had any... Did that in part, didn't it? Excuse me? Did that in part, anyway, on the contract? On contract. I'm confident that knowing that she was hired to fulfill the rest of the school year, and there's nothing in the record, nothing alleged that she was hired for anything beyond that. Where do you get that she was hired for a specific period of time? Because the document I read refers only to the period of time during which she would be paid. Well, that's coextensive with the end of the school year, and I think that's the only fair reading that one can make of a person brought in in the middle of the second semester and told that her employment or compensation will only run to the end of the school year. I think it's the only interpretation that makes any sense. Wait a minute. Let me use my presider privilege. Judge Stapleton asked you a question, and I don't think you answered the question. I think Judge Smith asked a question. Am I right, Judge Stapleton, there's a question outstanding? Well, she gave an answer, but it wasn't complete, I think, or helped me further. I mean, I don't understand it. The contract seems to me to be a red herring. If she had shown up at the school, never been seen before, but they were hiring teachers, and she went in for an interview and she said, I really want to work here and I'd really be good. I do have something that's troubling me. I heard that you have libation ceremonies, and I would insist upon accommodation, and that's against my religious faith. And they said, we're not going to hire you because of your religious beliefs. Now, surely that would be a violation of Title VII, wouldn't it? No question about that. Well, here she's alleging that her employment ceased, was ceased by your client's decision, and that decision was based on her religious beliefs, and she alleges the factual context in which that decision was made, and there's enough of a chronology connection that it's not to say one resulted from the other, particularly when they gave no other reason, allegedly. Why isn't that good under Thwombly or our recent case? Well, I would start with referring the court to the Clark County case, which states that you can't infer causality when an employer doesn't change a course of conduct that it had already decided upon. You can't infer from that that there's any kind of causal link between protected activity and the employment action. And the only facts in the record right now are that her employment was destined to end on June 17th. What she hasn't alleged is that there was a vacancy for the next school year, that there was anybody looking to hire her for the next school year, that she was otherwise going to get a position. Let me ask you a question on that. Is it your position that if someone is hired for a term and it's employment at will, that the employer can terminate or not rehire for any reason, including a reason prohibited by Title VII? No, I wouldn't say that, Your Honor. Okay. I would say, though, that in this case, which has failed to do that. Did the district court suggest that in its opinion? I don't think Judge Dalzell did that, no. Okay, go ahead. I was going to suggest that the allegations that are missing from the complaint, even after being amended, were any reasonable basis to believe that she was ever entitled to more than what she did receive. She hasn't alleged that she was terminated before the end date. She got exactly what it was that she was hired for. But she says they didn't renew my contract or hire me again because of my religious complaints, my complaints based on religion. Why doesn't that state a Title VII claim? Well, with all due respect, she hasn't alleged a failure to hire. She's alleged she was terminated, and in so doing overlooked perhaps the fact that she hadn't been hired for any term beyond that, which she was actually acceptable. Isn't that a very narrow reading of the complaint? No, I think it's a fair reading of the complaint. Well, if we were to give plaintiff an opportunity to amend, which I think we have to do in any event under our precedent, and plaintiff amended and said precisely that which you're saying the complaint doesn't allege, i.e., they didn't hire me for the next term, would that state a claim under Title VII? It probably would, Your Honor. I would suggest, though, that plaintiff has already had numerous opportunities to amend. Remember that before any Title VII claim can be brought in court, any EEOC charge must be filed. So this is already the third iteration of her claim. But this is after Twombly and after Phillips. And, you know, if we were to say that there's insufficient in the complaint, I'm not sure that we wouldn't be obliged to give her or him an opportunity to amend to satisfy those cases. Obviously, that would be entirely within the court's discretion. I would just suggest that as a matter of record, they've already had two shots, two bites at the apple, and a third, we would suggest, is not warranted in this case. I was going to call court's attention also with regard to the Twombly case, that while that was an antitrust matter, and obviously it applies to other cases, one point that I think the Supreme Court made that bears repeating here is the burden that is put on a defendant to go into discovery on the barest bones of a complaint where the standard hasn't been met. Now, obviously, a Sherman Act case against Bell Atlantic represents an enormous burden. We're talking about discovery. But I would respectfully suggest that for a small charter school in Philadelphia, the burdens of employment litigation are at least comparable. And it's something that perhaps the court should take into consideration, why the threshold has to be met in this case, why the Supreme Court felt it necessary to put a requirement that there be some more meat on the bones before proceeding to discovery. I don't know what the big burden would be. I mean, if they could have discovery, I assume the first thing they would do would be to take Ms. Wilkerson's deposition, and if she stated the facts with respect to this so-called ancestor worship, it might be enough so that the district court could say nonsense. Well, the discovery that the defendant might choose to take could be limited, but I'm afraid that the discovery that the plaintiff would choose to take might not be so limited. In fact, it could be an interrogation of everybody who's ever taught at the school. Well, the defendant could always ask the district judge to establish a very narrow, brief period of discovery that is specifically targeted. I agree, Your Honor. I would just note that the Supreme Court noted that constraints on discovery are a noble goal that is not always met in practice, and used that as one of the bases for their decision, that at some level the notice pleading rule has to have some, I think the term they used, heft behind it, that the plaintiff has to be able to put something on paper beyond the bare allegations and rewording what the legal standards are for claims before they can get to the next level. And while we're not suggesting that it's anything as onerous as state court fact pleading might be, we do believe that the Supreme Court intended to put plaintiffs on notice that they do need to do more than just reword the statute or reword the case holdings and get themselves to the next level. If the panel has no further discussions, and given the constraints, I'm sorry. I guess my question would be, you know, if you had answered and moved for summary judgment, this is not a very complex case, if you had answered and moved for summary judgment, don't you think you'd be further along than you are in this appeal? This might be the moment when I mention that I wasn't counsel below. We were retained on appeal. So I can't voice that. Okay. No comment is appropriate in that case. Thank you very much. Thank you. Okay. All right. Thank you very much. We'll hear from appellant's counsel, Mr. Ely. Thank you. Before I forget it, let me ask you a question. I didn't understand. There's an issue here about punitive damages, and it's clear under Supreme Court law that at least municipal corporations are not subject to punitive damages under Title VII or under the Pennsylvania Human Relations Act. Correct. What is your argument that this school district is not? I found some law that I think I referred to briefly. Even though I know Judge Dalzell didn't reach this issue, I think both parties briefed it out in an abundance of caution, that they may qualify as a private corporation for punitive purposes. I would concede that if they're found to be a municipal corporation, that would be it, but I did find some law that indicated charter schools may be something other than that.  I'm not convinced that that may be the case. They're corporations that are settled. They're sort of a hybrid, I think. That was where I was going with that. Judge Slapleton, you may very well be correct that I may not be able to sustain that. Okay. But I think at the pleading stage, there is a good chance I may. Turning briefly to what Your Honor characterized as the red herring of the contract, there was no failure to renew a contract, and there's been no case law cited to contradict the Whiting case that I cited to the effect that a termination of an employment contract for Title VII purposes is no different than a termination of employment. Well, it's not so much that as it's what is the effect of a termination at will. That's the big concern about the way the opinion reads, because if I'm able to take, I have five or six employees. If I can tell each one of them, you're now on a weekly employment contract. You're now on a daily employment contract. If your contract terminates at 5 o'clock today, Monday afternoon, and then it terminates again tomorrow, 5 o'clock on Tuesday afternoon, you can't bring a discrimination action against me. Your contract terminated. Certainly, if you don't renew because the plaintiff is a female, you would have a Title VII gender discrimination claim. Correct, but it would be the same if you don't renew because someone made a religious objection to a ceremony. It would be no different. I think the rule would have to be one way or the other. Is it your position that you don't have to give a reason when you terminate or when you don't renew, or that you do have to give a reason, I guess, maybe? I think Pennsylvania law does not require a reason. Pennsylvania law would just require an at-will termination. Your Honors had requested to see the June 29, 2005, letter. I saw that letter. I believe there was an indication you may want to put into the record. I don't know if I should move it in as 143A, which would be the next page, but if I could discuss that briefly, there is something interesting about that. When viewed with the March 4, 2005, letter, that Judge Smith quite correctly stated, it says nothing about being a contract. The March 4, 2005, letter at page 58A of our reportage record states that 28 days' notice will be given if employment is terminated and states that the compensation period, and here's where Judge Smith got it right again, that paragraph 5 on page 59A refers only to compensation, not to a term of employment. The June 29, 2005, termination letter... Wait a minute, wait a minute. You're not really suggesting that there was any suggestion that she would be working for no compensation? Not at all. I mean, teachers are teachers. Not at all. Yeah, okay. I see my time has expired. No, go ahead, answer the question. Thank you, Your Honor. Not at all, but I'm simply restating what I believe Judge Smith said, which is that the paragraph they're relying on for the alleged term of the contract really only discusses the term during employment.